Mary C. BOUDINOT, Plaintiff In Error,

v.

STATE of Oklahoma, ex rel. Joe CANNON, County Attorney, Muskogee County, Oklahoma, Defendant in Error.

No. 38527.

Supreme Court of Oklahoma.

May 26, 1959.

Pierce, Pierce & Brook, and Paul Gotcher, Muskogee, for plaintiff in error.

John D. Luton, County Atty., and Jesse L. Leeds, Asst. County Atty., Muskogee, for defendant in error.

BERRY, Justice.

This action was instituted by defendant in error, State of Oklahoma, ex rel. Joe Cannon, hereafter referred to as "plaintiff", against plaintiff in error, Mary C. Boudinot, hereafter referred to as "defendant", to enjoin defendant from keeping a large number of cats on her residential property in Muskogee County, Oklahoma. It was alleged that the noise and odor arising from keeping said cats created a public nuisance.

In her answer, defendant alleged that she at no time kept on her premises more than forty cats; that the cats were "kept safely, securely and in an extremely sanitary manner"; that every cat was "in a perfect state of health"; that she expressly denied that keeping said cats "results in any type of noise or odor which could possibly disturb or discomfort any person no matter how sensitive such person may be to obnoxious or offensive odors or noises."

Following trial of case to court, the court found that defendant's keeping forty cats upon her premises created a public nuisance and entered judgment enjoining defendant from maintaining or keeping in excess of four cats on her premises. In said judgment the court found in part as follows:

"That cats are also peculiarly inclined to emit nocturnal noises and that these are frequently noises made in connection with combat between cats and the mating activities of these animals.

"That in order to reduce these noises and also the possibility of an increase in the number of her cats, the defendant has had most of the female cats, thirteen to be exact, rendered sterile.

"That despite the efforts to which the defendant has gone to make her cats complete unobjectionable to other residents of the neighborhood, nonetheless, a number of these residents continue to experience from time to time obnoxious odors and noises emanating from the defendant's premises and directly attributable to the cats.

"That the keeping of these cats by the defendant impairs the enjoyment by other residents of their homes in the neighborhood and infringes on the well-being, comfort, and repose of a considerable number of people who reside near the defendant."

Defendant filed a motion for new trial and from order overruling same perfected this appeal. Defendant contends in substance that (a) burden was on plaintiff to establish that a public nuisance existed and that plaintiff failed to sustain said burden; that (b) the trial court's finding of facts is not sustained by the evidence; that (c) injunctive relief may only be granted where actual or substantial injury is shown; that (d) the trial court acted arbitrarily and capriciously in holding "that the keeping of 40 cats constitutes a public nuisance and that the keeping of four cats doesn't."

The record develops that a few years back, defendant acquired eight cats, seven of which were females. In a short time the seven females gave birth to kittens and the number of cats on her premises increased to forty. Following this increase, defendant's neighbors complained of defendant's cats coming upon their premises and destroying flowers, fouling flower beds and playpens through their excrement, and of the noise and odor associated with defendant's keeping said cats on her premises. In an attempt to alleviate the complained-of conditions, defendant built pens in which she confined her cats and a generous amount of sand was placed in the bottom of the pens. In theory, the cats, because of their habits, would bury their excrement in the sand and offensive odors would not arise. In an effort to control noise, and we assume control number, thirteen of the female cats were spayed and three toms were castrated, but this apparently left a breeding stock of twenty-five adult female and male cats.

A number of (seven) witnesses living in the vicinity of defendant's premises testified that both before and after the cats were confined, they fought, cried and squealed and that the odor created by the cats was very offensive. One witness testified that the odor was "unbearable" and that her family abandoned eating on their patio because of the odor coming from defendant's premises. Several witnesses testified that odor arising from defendant burning waste matter from the cats' pen was offensive and several testified that the stench created by the cats was greater after the cats were placed in pens than when they ran at large.

The Sanitarian of the City-County Health Department testified that he had inspected defendant's premises and that, in his opinion, it was impossible to keep such a large number of cats upon defendant's premises in the manner in which they were kept without offensive noises and odors resulting.

The record shows that defendant's motive in acquiring the kittens which formed the foundation stock, was based on compassion and that she kept the kittens and their progeny because she was fond of cats and wished to see them kept and cared for in what she considered to be a proper way. The record shows that considering her means, defendant spent a considerable sum in building quarters for the cats, feeding and doctoring the cats and attempting to keep their quarters sanitary and free from odors. Only one of defendant's neighbors testified that he did not detect offensive odors and disagreeable sounds from the cats. Other witnesses who did not live in the vicinity of defendant's residence testified that they inspected defendant's premises and heard no noises and detected no odors from the cats.

A nuisance is defined in part by 50 O.S. 1951 § 1, as follows:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

"First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or

\* \* \* \* \* \*

"Fourth. In any way renders other persons insecure in life, or in the use of property."

A public nuisance is defined in 50 O.S. 1951 § 2, as follows:

"§ 2. A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."

The evidence in this case clearly develops that a "considerable number of persons" were annoyed in their comfort and repose "at the same time" by the stench and noise arising and created by the large number of cats that defendant kept upon her premises, and for said reasons the trial court did not err in finding and holding that "the keeping of forty cats on her premises at 1307 Locust Street in the City of Muskogee, Oklahoma, is a public nuisance as defined by the Statutes of the State of Oklahoma."

We held in the first paragraph of the syllabus to Simons v. Fahnestock, 182 Okl. 460, 78 P.2d 388, that "Where the keeping of Shetland ponies, of itself lawful, in a strictly residential district, impairs the enjoyment of homes in the neighborhood, and infringes upon the well-being, comfort, repose, and enjoyment of the ordinary normal individuals residing therein, the keeping of same in such locality becomes a nuisance and may be enjoined." See also Champlin Refining Co. v. Dugan, 133 Okl. 20, 270 P. 559, to the same general effect.

At p. 341, 39 Am.Jur. "Nuisances", it is stated that "A reasonable use of one's property can never be construed to include those uses which produce noxious smells and result in a material injury to the comfort of the owner of adjacent property and his family. Thus, a business, although in itself lawful, which impregnates the atmosphere with disagreeable or offensive odors or stenches may become a nuisance to those occupying adjacent property, * * *. The same is true of ponds, * * * or from the keeping of animals." At p. 347, 39 Am.Jur. "Nuisances" this will be found:

"The noises made by animals on adjoining grounds may be a nuisance, affording good grounds for an injunc-
tion. The keeping of large numbers of animals in pens in a city may be a nuisance, where the resulting offensive odors and smells are detrimental to the comfort of those living in the neighborhood and passing by."

Defendant cites Smith v. Steineauf, 140 Kan. 407, 36 P.2d 995, in support of her contention that the trial court acted in an arbitrary and capricious manner in holding "that the keeping of 40 cats constitutes a public nuisance and that the keeping of 4 cats doesn't." The cited case doesn't sustain defendant's position. In said case, the court had under consideration the question of whether a city ordinance "limiting the number of cats which an owner may keep in his residence to five, without regard to distinctiveness of character of the animals and purpose, manner, and consequences of the keeping," was constitutional and not whether keeping a large number of cats in a residence created a public nuisance. As heretofore pointed out, the evidence in the instant case clearly sustains the trial court's finding that keeping forty cats under the conditions which they were kept, resulted in a public nuisance within the purview of 50 O.S. §§ 1 and 2, supra, and for said reason the problem confronting the trial court was not whether plaintiff was entitled to relief but the extent of the relief that plaintiff was entitled to. In Kenyon v. Edmundson, 80 Okl. 3, 193 P. 739, 740, we pointed out that in enjoining nuisances "The injunction ordinarily should be limited * * * to the usage that creates the nuisance." See also 66 C.J.S. Nuisances § 129, p. 925. In the instant case the public nuisance resulted from the large number of cats that defendant kept upon her premises, and it was therefore within the province of the trial court to enjoin the keeping of cats on said premises in excess of a number that in the court's discretion would not create a nuisance. On this issue the trial court had the benefit of the testimony of the Sanitarian for the City-County Health Department, who testified in substance that the nuisance created by defend-

ant's cats could be abated by limiting the number of cats kept upon her premises to four.

■ The enjoining of a nuisance is largely discretionary with the trial court whose decision will not be reversed on appeal where abuse of discretion does not clearly appear. Truttman v. City of Mc-Alester, 206 Okl. 297, 243 P.2d 352; 66 C.J.S. Nuisances § 129, p. 925. The defendant has wholly failed to show an abuse of discretion on the part of the trial court in the matter of enjoining defendant from keeping in excess of four cats on her premises.

Affirmed.